1  LAW OFFICES OF JUSTIN J. SHRENGER
   A Professional Corporation
2  Justin J. Shrenger (State Bar No. 151252)
   4601 Wilshire Boulevard, Suite 240
3  Los Angeles, California 90010-3883
   Telephone:  (213) 625-8886
4  Facsimile:  (213) 625-1388
   E-Mail:     mail@shrenger.com
5
6  Attorneys for plaintiff the Estate of
   Wuxi Chenhwat Almatech Co., Ltd.
7

8              **UNITED STATES DISTRICT COURT**

9              **CENTRAL DISTRICT OF CALIFORNIA**

10

11 | THE ESTATE OF WUXI CHENHWAT ALMATECH CO., a Chinese entity, | CASE NO |
   |---|---|
   | Plaintiff, | COMPLAINT FOR: |
   | vs. | (1)   BREACH OF CONTRACT;<br>(2)   QUANTUM VALEBANT;<br>(3)   OPEN BOOK ACCOUNT;<br>(4)   VIOLATION OF CAL BUS. &<br>        PROF. CODE §§ 17200 *et seq.* |
   | PRESTIGE AUTOTECH CORPORATION, a Nevada corporation; DJOKO SUTRISNO, a/k/a JIADONG WU, an Individual; DANIEL HAMIDJOYO, an Individual; LEI "CATHY" HUANG, an Individual; and DOES 1 through 10, inclusive, | |
   | Defendants. | |

*COMPLAINT*

Plaintiff Estate of Wuxi Chenhwat Almatech Co. complains as follows:

## JURISDICTION AND VENUE

1.  Jurisdiction is based upon 28 U.S.C. § 1332(a) in that there is complete diversity of citizenship between Plaintiff and Defendants.

2.  Venue is appropriate in this District pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2).

## THE PARTIES, RELATED ENTITIES AND INDIVIDUALS

3.  Plaintiff Estate of Wuxi Chenhwat Almatech Co. ("Plaintiff" or "Chenhwat") is an entity established by a Court of competent jurisdiction in Wuxi City, Jiangsu Province, China, to administer the affairs of the bankruptcy estate of Wuxi Chenhwat Almatech Co., Ltd., which prior to entry into bankruptcy, was a wholly foreign owned enterprises organized and existing under the laws of China, which maintained its principal place of business in Wuxi City, Jiangsu Province, China.

4.  Plaintiff is informed and believes, and on that basis alleges, that defendant Prestige Autotech Co. ("Prestige") is a Nevada corporation, with its principal place of business in Chino, California.

5.  Plaintiff is informed and believes, and on that basis alleges, that defendant Djoko Sutrisno a/k/a Jiadong WU ("Wu")[1] is a citizen of Indonesia who was formerly the Chairman of the Board of Directors and Legal Representative of Plaintiff at all times during which the acts and transactions complained of herein took place. Plaintiff is further informed and believes, and on that basis alleges, that Wu maintains his principal residence in this District.

6.  Plaintiff is informed and believes, and on that basis alleges, that defendant Daniel Hamidjoyo ("Hamidjoyo", together with Wu, the "Brother Defendants") is an

---

[1]/  Plaintiff is using the following convention with regard to the Romanization of Chinese names: the person's given name (e.g., "Roger" or "Susan") is initially capitalized, and the person's surname is written in all capital letters and underlined (e.g. "SMITH" or "JONES") and the name is written in the Given Name, Surname (Western) manner. Thus Jiadong WU has a "first name" of "Jiadong" and a surname of "WU", so persons unknown to him would call him "Mr. Wu" while his friends might call him "Jiadong".

individual who resides in this District and the President of Prestige for most of the relevant time period.

7. The true names and capacities, whether individual, corporate, associate or otherwise, of defendants Does 1 through 50, inclusive, are unknown to Plaintiff who therefore sues said defendants by such fictitious names and will seek leave of the Court to amend this Complaint to show their true names and capacities when the same have been ascertained. Plaintiff is informed and believes, and on that basis alleges, that each of the defendants designated herein as a Doe defendant is, in some manner, responsible for the events and happenings herein referred to, either contractually or tortiously, and caused damages to Plaintiff as herein alleged.

8. Plaintiff is informed and believes, and on that basis alleges, that at all times relevant hereto, Does 1 through 50, inclusive, were the agents, servants and/or employees of their co-defendants, and in doing the things herein alleged were acting within the scope of their authority as such agents, servants and/or employees and with the permission, consent and/or ratification of their co-defendants.

## COMMON ALLEGATIONS OF FACT

9. This is a case of theft from an entity in China by an entity in the United States pursuant to a fraudulent scheme designed and implemented by the Brother Defendants. The Brother Defendants owned two companies, one in America (Prestige) and one in China (Plaintiff). These Brother Defendants designed and implemented a fraudulent scheme and conspired together to not pay Plaintiff for goods sold to Prestige, and thereby transfer all the wealth of the Chinese company to the American company.

10. After implementing such scheme to bankrupt Plaintiff, the Brother Defendants used the resultant confusion to cause a default to be taken in meritless and fraudulent legal proceedings in the United States, which are not the subject of this lawsuit, but are evidence of the fraudulent scheme, thus ensuring, so they thought, that no collection action brought against Prestige and thus the theft would be complete.

11. As is the case with many fraudulent schemes, the underlying facts of this case seem complex at first, but hopefully can be explained with clarity herein. The Brother Defendants are Indonesians who have emigrated to this District and carry out international business in general, and sale of custom automobile wheels in specific.

12. The Brother Defendants designed and implemented the fraudulent scheme described herein was carried out by use of the corporate form of Prestige. Both of the Brother Defendants are therefore the *alter egos* of Prestige and liable for its debts as stated herein because they used the corporate form of Prestige to perpetrate a fraud.

13. Plaintiff is informed and believes, and on that basis alleges, that the Brother Defendants exercised complete dominion and control over Prestige and its assets and treated such assets as their own for all purposes such as that any alleged independent existence of Prestige and the Brother Defendants has ceased to exist, and Prestige is a mere instrumentality and conduit through which the Brother Defendants did and do now conduct their own personal business.

14. Adherence to the fiction of separateness of Prestige, on the one hand, and the Brother Defendants, on the other hand, would permit an abuse of corporate privilege, be inequitable and contrary to the interests of justice, and would promote a fraud upon Plaintiff, as Prestige was established and are run for the purpose of defrauding Plaintiff as herein alleged.

15. Plaintiff is informed and believes, and on that basis alleges, that the Individual Defendants have engaged in a pattern of conduct designed to avoid creditors and suppliers such as Plaintiff and have stolen all assets of Plaintiff by use of the fraudulent scheme and the corporate privileges granted to Prestige.

16. Plaintiff is informed and believes, and on that basis alleges, that the Brother Defendants established Prestige for the purpose of perpetrating a fraud upon Plaintiff as alleged herein and the Brother Defendants have abused the corporate privilege by, *inter alia*, so doing.

17. Plaintiff is informed and believe, and on that basis alleges, that the Individual Defendants have committed fraud during litigation, submitted forged and fraudulent documents, fraudulently claimed to have incurred losses, fraudulently concealed the existence of documents and deceived employees of Plaintiff and created forged and fraudulent documents purporting to evidence the foregoing, which documents the Brother Defendants and their cohorts and agents distributed to the United States Government, the California State Government, and the Plaintiff, among others. Such acts do not form the basis of the claims for relief stated herein, but rather are evidence of the fraud committed by the Brother Defendants during their abuse of the corporate privileges afforded them.

**THE BUSINESS RELATIONSHIP OF THE PARTIES AND ENTITIES**

18. Plaintiff is the Estate of a wholly foreign owned entity established under the Laws of the sovereign nation of China that engaged in the manufacture and export aluminum automobile wheels and related products almost exclusively for the benefit of Prestige.

19. Plaintiff is informed and believes, and on that basis alleges, that on June 20, 2003, an Indonesian Company P.T. Kompoenen Kencana Utama ("P.T. Kompoenen"), whose legal representative was Wu, established Plaintiff in Wuxi City, Jiangsu Province, China. Wu was the Chairman of the Board of Directors and the Legal Representative of Plaintiff since its inception until bankruptcy proceedings were initiated against it, and was ultimately responsible for all business operations of Plaintiff.

20. Plaintiff is informed and believes, and on that basis alleges, that Wu also owns two other companies in Indonesia named P.T. Enmaru International and P.T. Prima Alloy Steel Universal ("P.T. Prima") that manufacture automobile wheels.

21. Plaintiff is informed and believes, and on that basis alleges, that Prestige was established by Wu's natural brother, Hamidjoyo, who was President of Prestige for most of the relevant time period. According to P.T. Prima's Financial Statements 2009 and

2010, Prestige was owned and run by "close members of the family of the company's Director", i.e., Wu.

22. Prestige is a "merchant" within the meaning of the Uniform Commercial Code.

23. Plaintiff is informed and believes, and on that basis alleges, that P.T. Kompoenen used to manufacture automobile wheels sold to Prestige. Since approximately 2007, Plaintiff took over from P.T. Kompoenen the manufacture of wheels for Prestige. At the peak of Plaintiff's production, 87% of its production was supplied directly to Prestige.

24. Since 2007 and continuing until it ceased doing business, Plaintiff and Prestige entered into a series of part written, part oral agreements (among others) with each other wherein Plaintiff agreed to sell and Prestige agreed to purchase Plaintiff's automobile wheels with payment for such goods to be made by Prestige, and each of them, upon receipt by Prestige of Plaintiff's invoices for such goods.

25. Since approximately 2008, Plaintiff began to lose money, because Prestige constantly delayed the payment of outstanding balances. Plaintiff is informed and believes, and on that basis alleges, that the Brother Defendants used their control over Plaintiff's business operations and also of Prestige to ensure that Prestige always owed Plaintiff money. This conduct was particularly egregious, given that Plaintiff needed the working capital to continue the manufacture of wheels.

26. As an illustrative example only, in 2012, Plaintiff produced goods worth about US$25.6 Million, of which goods valued at more than US$20 Million were sent directly to Prestige, and the remainder to its designees, notwithstanding the fact that over such time period, Prestige owed Plaintiff more than US$15 Million. At this moment, Prestige owes Plaintiff principal in the amount of US$15,517,004.56 for items that Prestige ordered, received, retained and accepted pursuant to the Contracts (as defined below) but for which it has not paid. Due to the debt owed Plaintiff by Prestige, Plaintiff

had to cease manufacturing products in January, 2013. Wu fled China after leaving Plaintiff in ruins, and has not since returned.

27. On August 22, 2013, a creditor of Plaintiff filed a proceeding for reorganization in bankruptcy against Plaintiff in China.

28. On August 27, 2013, another creditor of Plaintiff filed a separate proceeding for reorganization in bankruptcy against Plaintiff in China.

29. On September 13, 2013, the Wuxi Bankruptcy Court consolidated the actions and established a consolidated reorganization proceeding, Wuxi Bankruptcy Case No. 0012 and appointed an administrator to oversee Plaintiff's affairs on that same day.

30. After the administrator was appointed in the Bankruptcy Action, the administrator retained accountants to audit the accounts of Plaintiff. In a report dated December 13, 2013, portions of which are attached hereto as Exhibit "A", the accountants determined that plaintiff herein Prestige was indebted to Plaintiff in the sum of RMB-95,767,335.07 (approximately US$15,322,775.00 at the current exchange rate). On its books, Plaintiff accounts for this amount as a reserve for bad debt due to the vagaries of American litigation.

31. It was at that time that the Plaintiff learned that Prestige had breached its Contracts and had no intention of paying for goods received, retained and accepted by Prestige.

**DEFENDANTS' SCHEME TO DEFRAUD**

32. Plaintiff is informed and believes, and on that basis alleges, that in order to transfer all the wealth of Plaintiff to Prestige the Brother Defendants conspired with each other to cause Prestige to file a complaint against Plaintiff in the United States, and devised fraudulent service of process and default schemes, thus ensuring (so they thought) that no collection action brought by Plaintiff against Prestige.

33. For such reason, in all claims for relief set forth herein, Plaintiff sues all defendants as the co-conspirators of one another, as well as in the case of Wu and

Hamidjoyo, as the *alter egos* of the corporate defendant Prestige for the reasons stated below.

34. Plaintiff is informed and believes, and on such basis alleges, that the each of the Individual Defendants approved, ratified and furthered the previous conspiratorial acts of their co-defendants, and all the co-conspirators during the date and circumstances set forth above, acted as agents and co-conspirators for their other co-conspirators.

35. As evidence of conspiracy and the fraud, concealment, suppression, and conspiratorial misconduct and of the referenced conspirators, and each of them, as herein set forth, false and fraudulent representations pertaining to the order of goods that they had no intention of paying for, and the fraudulent scheme that they implemented in order to cover up such fraud and steal from the Plaintiff.

36. This fraudulent scheme is evidenced by, *inter alia*, the conduct engaged in by them that was discussed in the Action pending before the California Superior Court in and for San Bernardino County, California. As described with specificity in the pleadings filed in a case entitled *Prestige Autotech Corporation v. Wuxi Chenhwat Almatech Co.,* San Bernardino County Superior Court Case Number CIVRS 1302108 (the "State Court Action") Defendants fraudulently arranged for a meritless lawsuit to be brought by the debtor Prestige against the defrauded party, Plaintiff herein, which then defaulted under the faithless control of defendant Wu, who in flagrant violation of his fiduciary duties and other applicable law, arranged to have the Plaintiff herein default on the meritless action so that it could not collect the sums that it was and is indisputably owed for goods that it provided to the Defendants, which goods the Defendants received, retained, and accepted, but for which the Defendants never paid.

37. After such default was taken, Plaintiff herein went into bankruptcy, discovered Defendants' fraudulent scheme, and promptly moved to have the default that was entered against it set aside. Prestige, knowing that its case was completely without merit, twice appealed the Trial Court's Orders granting relief from default.

38. The first notice of appeal was filed by Prestige on July 15, 2014 and the appellate court issued the remittitur on May 27, 2016 in the SB County Action. On October 26, 2016, Prestige again filed the notice of appeal and the appellate court issued the remittitur on March 26, 2019. Therefore, Plaintiff Chenhwat herein could not bring this action against any of Defendants herein sooner due to Defendants' fraudulent scheme which tolled the relevant statutes between July 15, 2014 and March 26, 2019.

39. Defendants are estopped to plead the applicable statutes of limitation as an affirmative defense for numerous reasons, including the fact that the applicable statutes are tolled during the pendency of the appeal, "from the time notice of appeal is filed to the time the remittitur is issued by the appellate court." *Korody Colyer v. General Motors*, 208 Cal. App. 3d 1148, 1151, 256 Cal. Rptr. 658 (1989), *citing Gibbs v. Haight, Dickson, Brown & Bonesteel*, 183 Cal. App. 3d 716, 228 Cal. Rptr. 398 (1986).

40. Defendants' fraudulent scheme is further evidenced by their dismissal of the State Court Action immediately after the appellate court finally denied their appeal. Such dismissal shows the State Court Action was not only frivolous, but also fraudulent, designed to further defraud Plaintiff.

41. Quite simply, this is a mere collection action for which the Defendants have no defense. The fraudulent intent of Defendants is displayed by their scheme to defraud as embodied in the State Action and their fraudulent conduct underlying such action, and their dismissal thereof when the plan to avoid payment was disclosed. Simply put, such litigation was not undertaken for the purpose of dispute resolution and was in fact never privileged because the Defendants had no intention when initiating such litigation to collect any sums or otherwise invoke the dispute resolution mechanism. Rather such litigation was nothing more than part of a fraudulent and cynical scheme to perfect the theft of Plaintiff's assets.

## FIRST CLAIM FOR RELIEF
(Breach of Contract - Plaintiff Against Prestige)

42. Plaintiff incorporates by reference all other paragraphs contained in this Complaint as though fully set forth at this point.

43. Since 2007, Plaintiff and Defendants entered into a series of written agreements emanating from this District and concerning the delivery of goods to this District and/or for the benefit of the Defendants in this District which were recorded by a series of Purchase Orders and corresponding Invoices pursuant to which wherein Plaintiff agreed to sell, and Defendants agreed to purchase, Plaintiff's automobile wheels with payment for such goods to be made by Prestige pursuant to the terms of such contracts (collectively, the "Contracts") upon receipt by Prestige of Plaintiff's invoices for such goods. A table setting forth all of the purchase orders and invoices is attached hereto as Exhibit "B" and incorporated herein by this reference as though fully set forth at this point.

44. Attached hereto as Exhibit "C" are true and correct copies of the Purchase Orders, Bills of Lading, Packing Lists, and Invoices for the year 2012 upon which Exhibit "B" was based which contain all terms and conditions of the Contracts, which are all incorporated herein by this reference as though fully set forth at this point.

45. Plaintiff has performed all conditions, covenants and promises pursuant to each of the Contracts except to the extent that such performance was excused or made impossible due to the actions of Defendants.

46. Pursuant to the terms of the agreements of the parties, Defendants were to pay the Plaintiff for the goods that they received, retained and accepted. Notwithstanding, Defendants, each of them, breached the above referenced Contracts by failing to tender payment to Plaintiff for the said invoices, and in toto, failed to pay the sum of US$15,517,004.56, despite Plaintiff's repeated written demands therefor.

47. As a direct and proximate result of the above referenced breaches by Defendants, Plaintiff has been damaged in excess of US$15,517,004.56, and seeks

recovery thereof from said Defendants, and each of them, together with interest thereon at the legal rate from the date(s) of breach through date of judgment herein in a sum to be determined according to proof, and costs of suit incurred herein according to proof.

## SECOND CLAIM FOR RELIEF
(Quantum Valebant - Plaintiff Against Prestige)

48. Plaintiff incorporates by reference all other paragraphs contained in this Complaint as though fully set forth at this point.

49. Within the last eight (8) years in this District, Prestige became indebted to Plaintiff for the goods sold and delivered by Plaintiff to Prestige who then and there agreed to pay the sum of US$15,517,004.56 for the goods pursuant to the Contracts between the parties.

50. Neither the whole nor any part of the above sum has been paid, although repeated demands therefor have been made, and there is now due, owing, and unpaid from Prestige to Plaintiff the sum of US$15,517,004.56, together with interest thereon at the rate of ten percent per annum from the date of delivery. Plaintiff further seeks recovery herein from Prestige of costs of suit incurred herein according to proof.

## THIRD CLAIM FOR RELIEF
(Open Book Account - Plaintiff Against Prestige)

51. Plaintiff incorporates by reference all other paragraphs contained in this Complaint as though fully set forth at this point.

52. Within the last eight (8) years in this District, at the special insistence and request of Prestige, Plaintiff furnished to Prestige on an open book account as that term is defined in Section 337a of the California Code of Civil Procedure for the goods having an agreed upon value of US$15,517,004.56, at which time the account became certain and settled.

53. The total amount owed by Prestige to Plaintiff in accordance with the terms of such open book account was and is US$15,517,004.56, plus interest at the maximum rate permitted by law.

54. The whole of the above referenced sum has not been paid, although demands therefor have been made, and there is now due, owing, and unpaid from Prestige to Plaintiff the sum of US$15,517,004.56, together with interest thereon at the maximum rate permitted by law.

55. In addition to the foregoing relief, this action is based upon a "book account" as defined in Section 337a of the California Code of Civil Procedure. Therefore, Plaintiff is entitled to its reasonable attorneys' fees pursuant to and in the full amount permitted by Section 1717.5 of the California Civil Code, as an element of costs recoverable by Plaintiff as the "prevailing party" in this action as defined in Section 1717 of the California Civil Code.

**FOURTH CLAIM FOR RELIEF**
(Violation of Cal. Bus. & Prof. Code §§ 17200 *et seq*. -
Plaintiff Against all Defendants)

56. Plaintiff incorporates by reference all other paragraphs contained in this Complaint as though fully set forth at this point.

57. The conduct described with specificity above constitutes unlawful, unfair and/or fraudulent business practices pursuant to California Business and Professions Code Sections §§ 17200 *et seq*.

58. As a result of such unfair business practice, Plaintiff has been actually damaged as alleged with specificity herein.

59. As a result, pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiff is entitled to *restitution* in the full amount of the consideration provided to Defendants, which consideration Defendants have received, retained and accepted, but for which Defendants have not paid.

WHEREFORE, Plaintiff Estate of Wuxi Chenhwat Almatech Co. prays judgment as follows:

1. On all claims for relief damages to be proved at trial together with interest thereon at the maximum rate permitted by law;
2. On the Fourth through Sixth Claims for Relief, for punitive and/or exemplary damages prayed therein;
3. For attorneys' fees as provided by contract, statute, or any other principle of law;
4. For the costs of suit incurred herein; and
5. For such other and further relief as the Court may deem proper.

DATED: May 24, 2021                LAW OFFICES OF JUSTIN J. SHRENGER

By _____
    Justin J. Shrenger
Attorneys for plaintiff Estate of Wuxi Chenhwat Almatech Co., Ltd.